UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM TURNBULL *et al.*,

    *Plaintiffs*,

v.

NANCY BERRYHILL *et al.*,

    *Defendants*.

Civil Action No. 16-1750 (TJK)

## MEMORANDUM OPINION

Plaintiffs are a group of dual citizens and lawful permanent residents of the United States who at some point also worked in a foreign country. As a result, they are eligible for retirement benefits under both the Social Security Act and that foreign country's laws. And because of that eligibility, the Social Security Administration applied (or, for one plaintiff, allegedly will apply) the Windfall Elimination Provision to their Social Security benefits, thereby reducing them. Plaintiffs allege that applying the WEP to their benefits is unlawful, and they seek to represent a class of similarly-situated beneficiaries. Defendants have moved to dismiss for failure to exhaust and improper venue, or in the alternative, for summary judgment. For the reasons explained below, the Court will grant Defendants' motion.

**I.    Background**

    **A.    Statutory and Regulatory Background**

The Social Security Act, 42 U.S.C. § 401 *et seq.*, entitles certain persons to retirement benefits. One limitation on those benefits is the Windfall Elimination Provision (WEP), "which reduces the benefits received by certain individuals who also receive pensions for work that did not require them to pay social security taxes." *Hawrelak v. Colvin*, 667 F. App'x 161, 162 (7th

Cir. 2016); *see also* 20 C.F.R. § 404.213.  As relevant here, the WEP reduces the Social Security benefits of those who receive foreign pensions because they worked in another country.  20 C.F.R. § 404.213(a)(3).  Not all foreign pensions trigger the WEP; only those that are "from private employers" or "from social insurance systems that base benefits on earnings but not on residence or citizenship."  *Id.*

The Social Security Administration (SSA) applies the WEP according to the Program Operations Manual System (POMS), an internal guidance document for SSA employees.  *See Hall v. Sebelius*, 689 F. Supp. 2d 10, 15–16 (D.D.C. 2009).  The POMS sets out various policies relating to the WEP, including how to calculate the reduction, POMS GN 00307.290; when a totalization agreement changes that calculation,[1] POMS RS 00605.386; and exceptions to the WEP, POMS RS 00605.362.  The POMS also identifies six countries whose pension systems are partly earnings-based and partly residence-based, such that only part of those pensions should factor into a beneficiary's WEP reduction.  *See* POMS GN 00307.290(C)(6) (noting that Canada, Sweden, Norway, Finland, the Netherlands, and Switzerland have these hybrid systems).

If a beneficiary believes that the SSA miscalculated her WEP reduction, she may challenge that calculation through an administrative review process.  *See Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993).  That process has four steps: (1) an initial determination; (2) reconsideration; (3) a hearing before an administrative law judge; and (4) Appeals Council review.  20 C.F.R. § 404.900(a)(1)–(4).  After those steps are complete—that is, once a

---

[1] Whether the WEP applies to an individual's benefits turns in part on whether there is a "totalization agreement" between the United States and the foreign country from which she receives the foreign pension.  *See* 20 C.F.R. § 404.213(f).  "Totalization agreements provide for the grant of retirement benefits to persons who split their careers among two or more countries and thus lack sufficient periods of covered employment under each country's retirement system to qualify for benefits."  *Hawrelak*, 667 F. App'x at 163.

dissatisfied claimant has exhausted the administrative review process—that person may seek review in federal court. *Id.* § 404.900(a)(5). The judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), has both "jurisdictional and non-jurisdictional exhaustion components." *Cost v. Social Security Administration*, 770 F. Supp. 2d 45, 48 (D.D.C. 2011). "The requirement that a plaintiff must first present his claim to the agency is jurisdictional and cannot be waived, while the requirement that the plaintiff must complete the agency review process is non-jurisdictional and may be waived." *Id.* In other words, the Court has no jurisdiction under 42 U.S.C. § 405(g) unless "a claim for benefits [has] been presented to the" SSA, but the Court can waive exhaustion of the administrative process for equitable reasons. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).

**B.     Procedural Background**

Plaintiffs are several dozen dual citizens and lawful permanent residents of the United States. ECF No. 23 ("Second Am. Compl.") ¶¶ 2–35. They sued in August 2016 and filed the operative Second Amended Complaint in April 2017. ECF No. 23. They challenge the SSA's application of the WEP to their benefits because they receive foreign pensions. *Id.* ¶¶ 49–57. Specifically, they allege that the SSA has an internal, undisclosed policy of applying the WEP to beneficiaries who receive pensions from 24 countries—in violation of the Social Security Act, its regulations, and international agreements between the United States and those countries. *Id.* ¶¶ 42–53.

Most Plaintiffs live in the United States. *See id.* ¶¶ 2–34. Four do not specify their residence. *Id.* ¶¶ 28–31. And two live outside the United States. *Id.* ¶¶ 4, 35. Collectively, they allege that they receive or qualify for foreign pensions from the United Kingdom, the

3

Netherlands, Switzerland, Canada, Belgium, Norway, Germany, and Greece.[2]  *Id.* ¶¶ 2–35.  They seek to represent all persons similarly situated, defined as those who receive foreign pensions from any of twenty-four specified countries and believe the WEP has been erroneously applied to their Social Security benefits.  *Id.* ¶¶ 50–51.

With one exception, Plaintiffs allege that they have complied with the jurisdictional exhaustion requirement in 42 U.S.C. § 405(g) by filing claims for benefits from the SSA.  Second Am. Compl. ¶ 104.  They admit that when they filed the complaint, they had not exhausted administrative remedies, but they argue that the Court should excuse their failure to do so.[3]  *Id.* ¶¶ 106–108; ECF No. 25 ("Pls.' Opp.") at 10–27.  One plaintiff, Alain Merkel, had not presented a claim to the SSA at the time of Defendants' motion because he had not yet claimed benefits.  Second Am. Compl. ¶ 34.

Pending before the Court is Defendants' motion to dismiss the complaint for lack of jurisdiction and improper venue, or, in the alternative, for summary judgment.  *See* ECF No. 24.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action for improper venue.  "In considering a Rule 12(b)(3) motion, the Court 'accepts the

---

[2] Although two plaintiffs allege that they qualify for benefits from Canada in addition to other countries, Plaintiffs do not challenge application of the WEP to Canadian pensions.  *See* Second. Am. Compl. ¶¶ 28–29, 50–51.

[3] In the Second Amended Complaint, Plaintiff Alison Barnes alleges that her husband, who is not a plaintiff in this case, "fully exhausted his administrative remedies as they related to the application of the WEP to the U.S. Social Security retirement benefits of both him and Mrs. Barnes."  Second Am. Compl. ¶ 6.  But in her declaration, Barnes avers that she "did not pursue [her] own agency appeal under her own social security number, as [she] was led to believe from [her] husband's experience that there was no point in doing so."  ECF No. 25-2 at 6.  Regardless of whether Barnes's husband exhausted his remedies she presents no evidence that she did so, and Plaintiffs do not dispute Defendants' assertion that no plaintiff had fully exhausted their administrative remedies at the time the motion was filed.  *See* ECF No. 24-2 at 4; ECF No. 24-1; ECF No. 25 at 10; ECF No. 25-3.

plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor.'" *Jalloh v. Underwood*, 300 F. Supp. 3d 151, 154 (D.D.C. 2018) (quoting *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008)).  But it is the plaintiff's burden to show that venue is proper in her chosen forum.  *Id.*

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).[4]

## III.  Analysis

In urging dismissal or summary judgment, Defendants make essentially three arguments: (1) Plaintiffs failed to exhaust their administrative remedies under § 405(g), no exception to the non-jurisdictional exhaustion requirement applies, and no other statute enables the Court to hear Plaintiffs' case; (2) Plaintiffs lack standing to challenge how the SSA applies the WEP to claimants who receive pensions from countries from which Plaintiffs *do not* receive pensions;

---

[4] Defendants have styled their arguments related to exhaustion of administrative remedies as seeking dismissal, or in the alternative, summary judgment.  "When 'matters outside the pleadings are presented to and not excluded by the court' on a Rule 12(b)(6) motion, 'the motion must be treated as one for summary judgment under Rule 56.'" *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 49 (D.D.C. 2011) (quoting Fed. R. Civ. P. 12(d)).  Here, both parties have presented material outside the pleadings (to which the other party did not object), so the Court will treat Defendants' motion as one for summary judgment. *See Calderon v. Berryhill*, No. 17-cv-494 (RDM), 2019 WL 4575605, at *4 (D.D.C. Sept. 20, 2019); *Cost*, 770 F. Supp. 2d at 49.

and (3) the District of Columbia is an improper venue for all but the claims of two plaintiffs. *See* ECF No. 24-2 ("Defs.' Mot.") at 1. As explained below, the Court agrees with Defendants, will dismiss for improper venue the claims brought by all plaintiffs except two, and grant summary judgment for failure to exhaust on those remaining.[5]

### A.   Venue

The Social Security Act specifies where venue is proper for actions arising under it. 42 U.S.C. § 405(g). "Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia." *Id.* Defendants argue that Plaintiffs have not met their burden to show that venue is proper as to all but two plaintiffs, Anthony Jones and Evangelos Pezas. Jones and Pezas allege that they reside abroad, but all other plaintiffs allege that they reside in the United States outside this District.[6] In response, Plaintiffs do not dispute Defendants' characterization of Plaintiffs' residencies, but argue that an exception to § 405(g) applies to claims such as theirs which are "collateral to any claim for benefits," such that the

---

[5] Defendants do not contest Plaintiffs' standing to pursue claims related to the WEP's application to their *own* benefits. Defendants' standing argument is related to Plaintiffs' attempt to certify a class that includes claimants who receive benefits from more countries. But after the close of briefing on this motion, the Court granted Plaintiffs an extension of time to move for class certification and determined that "it would be more efficient to take up class certification issues after the motion to dismiss has been resolved." Minute Order of July 6, 2017. Because the Court will grant Defendants' motion on other grounds, and it need not resolve any class certification issues, it also need not address Defendants' standing argument.

[6] While four plaintiffs do not specifically allege their residence, *see* Second Am. Comp'l ¶¶ 28–31, the Second Amended Complaint lists their addresses as within the United States, and they do not dispute Defendants' asserted statement of undisputed fact that, other than Jones and Pezas, Plaintiffs reside in various states. *See id.* at ¶¶ 1–4; ECF No. 24-1 ¶ 6.

general venue statute, 28 U.S.C. § 1391, applies.  *Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999); *see* Pls.' Opp. at 30.

      The Court cannot agree with Plaintiffs.  The *Vencor* court held, with little analysis, that because the Supreme Court had recognized a collaterality exception to § 405(g)'s exhaustion requirement in *Mathews v. Eldridge*, 424 U.S. 319, 329–31 (1976), § 405(g) as a whole did not apply to any collateral claim.  63 F. Supp. 2d at 6 ("In this case, however, § 405(g) and (h) do not apply, because this action is collateral to any claim for benefits.").  But in *Eldridge,* the Supreme Court did not hold that other portions of § 405(g) no longer applied.  For example, it determined that the presentment element of § 405(g) jurisdiction is nonwaivable, and that "the only avenue for judicial review" of Eldridge's claim was § 405(g).  424 U.S. at 327–28.  And in cases both before and after *Eldridge*, the Court has held that jurisdiction over a claim arising under the Social Security Act, even one which the plaintiff characterizes as procedural or collateral, can be obtained only under § 405(g), and not under 28 U.S.C. § 1331.[7]  *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10–15 (2000); *Heckler v. Ringer*, 466 U.S. 602, 611–21 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 756–63 (1975).  Thus, because § 405(g) continues to apply, there is no exception to its venue provision for suits raising collateral issues.  *See Integrity Social Work Servs., LCSW, LLC v. Azar*, No. 20-cv-118 (BAH), 2020 WL 3103913, at *6 (D.D.C. June 11, 2020); *Michener v. Saul*, No. 18-cv-1657 (RC), 2019 WL 3238582, at *3 (D.D.C. July 18, 2019) (transferring another putative class action challenging application of the WEP for improper venue).  And because there is no collaterality exception to 28 U.S.C.

---

[7] The only exception to this rule is mandamus jurisdiction under 28 U.S.C. § 1361.  Although the Supreme Court has declined to address whether mandamus is available in Social Security cases, *Bowen v. City of New York*, 476 U.S. 467, 478 n.9 (1986), the D.C. Circuit has held that it is, *see Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001).

§ 405(g)'s venue provision, Defendants are correct that this Court is an improper venue for the claims of all plaintiffs except Jones and Pezas.

When venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "While as a general matter, a transfer of the case is favored over a dismissal, dismissal is appropriate where the plaintiff's claims have obvious substantive problems." *Lemon v. Kramer*, 270 F. Supp. 3d 125, 140 (D.D.C. 2017) (cleaned up). Here, the Court will dismiss the claims brought by all Plaintiffs except Jones and Pezas for several reasons. First, 28 U.S.C. § 1406(a) provides that a district court may transfer "such case to any district or division in which it could have been brought." There is no district where venue would be proper as to all the United States-based plaintiffs, who live variously in "California, Florida, Nevada, North Carolina, Texas, Connecticut, and Washington State." ECF No. 24-1 ¶ 6. Second, Defendants ask that the Court dismiss rather than transfer the claims if it finds improper venue, and in response, Plaintiffs did not request transfer in such circumstance. Def's Mot. at 19; Pls.' Opp. at 29–31. And finally, as discussed below, "there are 'substantive problems' with the [Second Amended] Complaint, which, in its current form, would face dismissal." *Lemon*, 270 F. Supp. 3d at 140. For these reasons, transfer of this case is not in the interest of justice, and the Court will dismiss the claims of all plaintiffs except Jones and Pezas for improper venue.

### B.  Administrative Exhaustion

Defendants argue that Plaintiffs failed to exhaust their administrative remedies and that no exception to the non-jurisdictional exhaustion requirement applies. Plaintiffs concede that

they have not exhausted the SSA's administrative procedures, but they argue that the Court should excuse this failure.[8]

A court may waive the exhaustion requirement of § 405(g) only if (1) the issue raised in the lawsuit is collateral to the matter on appeal; (2) the plaintiffs show that they face irreparable injury if the court enforces the requirement against them; or (3) it would be futile to require administrative exhaustion.  *Suarez v. Colvin*, 140 F. Supp. 3d 94, 99–100 (D.D.C. 2015).

Plaintiffs argue, and Defendants do not contest, that this test is disjunctive rather than conjunctive; that is, a sufficient showing on *any* of the three prongs will suffice for waiver.  Pls.' Opp. at 11.  The case law is not altogether clear on this point.  But in *Tataranowicz v. Sullivan*, 959 F.2d 268, 274 (D.C. Cir. 1992), the D.C. Circuit held that futility alone can excuse exhaustion, and in *Ryan v. Bentsen*, 12 F.3d 245, 248 (D.C. Cir. 1993), it determined that that a collateral issue combined with irreparable harm would be sufficient.  Many courts in this District have considered each ground independently.  *See, e.g.*, *Am. Hospital Ass'n v. Azar*, 385 F. Supp. 3d 1, 7 (D.D.C. 2019); *Suarez*, 140 F. Supp. 3d at 100; *Nat'l Ass'n for Home Care & Hospice, Inc. v. Burwell*, 77 F. Supp. 3d 103, 110–112 (D.D.C. 2015); *see also Thibeaux v. Soc. Sec. Admin.*, No. 16-5099, 2016 WL 6915553, at *1 (D.C. Cir. Oct. 6, 2016) (per curiam).  *But see Beattie v. Astrue*, 845 F. Supp. 2d 184, 192–93 (D.D.C. 2012) (finding that the plaintiff's claims were collateral but declining to excuse exhaustion because he did not show futility or irreparable harm); *Friedman v. Leavitt*, No. 8-cv-586 (RMU), 2008 WL 11389031, at *5 n.3

---

[8] Jones and Pezas are the only plaintiffs for whom venue is proper here, but the Court's exhaustion analysis likewise applies to all plaintiffs except Alain Merkel.  Merkel has not yet presented a claim to the SSA, and so his case is also barred because he has failed to satisfy the mandatory, jurisdictional portion of § 405(g)'s exhaustion requirement, to which the Court may not make exceptions.  *See Heckler v. Ringer*, 466 U.S. 602, 620–22 (1984); *Hall v. Sebelius*, 689 F. Supp. 2d 10, 18 n.2 (D.D.C. 2009).

9

(D.D.C. Dec. 6, 2008) (relying on *Ryan* to hold that a plaintiff must show either futility or *both* collaterality and irreparable harm to excuse exhaustion). Ultimately, the Court need not decide whether collaterality or irreparable harm alone warrant waiving the exhaustion requirement, because "this Court agrees with the SSA that Plaintiff has failed to allege any possible basis for waiver, and thus has not satisfied the applicable standards for waiving non-jurisdictional exhaustion." *Suarez*, 140 F. Supp. 3d at 100.

### 1.    Futility

Plaintiffs argue that it would be futile to pursue their claims through the administrative process, because the agency will not render decisions that contradict its own policy. Pls.' Opp. at 12–14. A plaintiff seeking to show futility in this Circuit must meet an "extraordinarily high hurdle." *Suarez*, 140 F. Supp. 3d at 101. "For exhaustion to be futile, there must be a 'certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless.'" *Cost*, 770 F. Supp. 2d at 50 (quoting *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of the Univ. of DC*, 56 F.3d 1469, 1475 (D.C. Cir. 1995)). Allegations that an adverse decision would be highly likely are insufficient. *See Comm'cns Workers of Am. V. AT&T Co.*, 40 F.3d 426, 433 (D.C. Cir. 1994).

Plaintiffs cannot meet the high bar of futility. Most obviously, this is so because one of them *has* in fact received a favorable decision since Defendants filed their motion. After arguing that the WEP was not properly applied to his Social Security benefits on account of his Belgian pension, Plaintiff William Tran received a fully favorable ALJ decision, and the Appeals Council did not revisit it. ECF No. 34.[9] Moreover, other similarly-situated beneficiaries (who are not

---

[9] Tran alleges that despite his receipt of a final, favorable decision, the SSA has refused to pay him the increased benefits to which he is entitled. ECF No. 35-1. Of course, it would be worrisome if SSA failed to ultimately abide by its own administrative process. But that would

plaintiffs here) have also won fully favorable decisions. ECF Nos. 42-3–42-5. That some beneficiaries have succeeded in pressing the same arguments Plaintiffs advance in this suit shows that administrative exhaustion is not futile.

Plaintiffs try to salvage their futility argument by arguing that inconsistent agency results on the same facts show the need for judicial intervention. *See, e.g.*, ECF No. 34 at 3; ECF No. 42 at 2. And indeed, Plaintiffs submit evidence of another claimant (not a plaintiff here) who had his fully favorable decision reversed by the Appeals Council, which directed the ALJ to apply the WEP to his Social Security benefits because he receives a Belgian pension, even though he receives the same pension as Tran and their claims present the same legal issues. ECF No. 42. But inconsistent results—even inexplicably inconsistent results—differ from a "certainty of an adverse decision." *Cost*, 770 F. Supp. 2d at 50.

Some courts in this District have also found futility when the plaintiffs challenge as contrary to law a generally applicable policy which does not depend on the facts of an individual case. *See, e.g.*, *Hall*, 689 F. Supp. 2d at 24 (citing cases). Plaintiffs try to avail themselves of this alleged doctrine by arguing that a POMS provision stating that "SSA assumes that work which was covered under a foreign social security system was not covered under U.S. Social Security" is such a policy. Pls.' Opp at 13–14. But even assuming this purported doctrine is consistent with D.C. Circuit exhaustion precedent, it does not apply here. For starters, Plaintiffs have not shown that the SSA's administrative process is bound by any similarly clear and generally applicable policy that makes their claims futile. Indeed, that other claimants have

---

not show a certainty of an adverse decision regarding a cause of action in the complaint, since Plaintiffs do not allege that the SSA has failed to pay him the benefits which its own administrative process has already awarded him. The alleged failure of SSA to immediately comply with this favorable decision says nothing about whether Plaintiffs are certain to obtain an adverse decision after exhausting their administrative remedies.

11

succeeded on grounds similar to those Plaintiffs argue here shows that, even if such a policy exists, its administrative process is *not* bound by it. In any event, though, Plaintiffs struggle to even identify a particular policy at issue. The passage they cite from the POMS is simply a general statement, which is followed by more specific guidelines that determine which foreign pensions trigger application of the WEP and which do not. *See* ECF No. 26 ("Defs.' Reply") at 2; POMS GN 00307.290, Evidence of Foreign Pensions and the Windfall Elimination Provision (WEP) (June 4, 2015), https://secure.ssa.gov/apps10/poms.nsf/lnx/0200307290.

For similar reasons, *Beeler v. Colvin*, No. 1:15-cv-01481-SEB-MJD, 2016 WL 7111646 (S.D. Ind. Dec. 7, 2016), does not apply here. In that case, Canadian-American plaintiffs challenged application of the WEP to their Canadian or Quebecois pensions, and the court found that administrative exhaustion would be futile. *Id.* at *3. But in that case, the POMS had a specific provision stating that "[p]ayments made under the Canada Pension Plan (CPP) and Quebec Pension Plan (QPP) are earnings-based and are subject to WEP offset." *Id.* As the court noted, there was no ambiguity or room for interpretation in application of the provision to those plaintiffs' CPP or QPP pensions. *Id.* This case presents nothing of the sort, especially as to the two remaining plaintiffs, Jones and Pezas. *See* Second Am. Compl. ¶¶ 4, 35.

### 2.     Collaterality

Next, Plaintiffs argue that the Court should waive exhaustion because their claims that the WEP does not apply to their Social Security benefits are collateral to their substantive claims for benefits. Pls.' Opp. at 17–21. Although a precise definition of "collateral" is elusive, "[a] claim is collateral if it is not essentially a claim for benefits." *Fitzgerald v. Apfel*, 148 F.3d 232, 234 (3d Cir. 1998) (quoting *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993)); *see Heckler v. Ringer*, 466 U.S. 602, 614 (1984); *Arriva Medical LLC v. U.S. Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 279 (D.D.C. 2017). That is, a claim is collateral if the plaintiffs challenge

some element of the process that stands apart from the ultimate question of whether they will receive benefits in a particular case.  For example, claims of procedural irregularities, such as claims that the administrative procedure is constitutionally defective, *Eldridge*, 424 U.S. at 330, or that there exists a covert agency-wide policy of failing to follow an acknowledged procedure for evaluating disability claims, *Bowen v. City of New York*, 476 U.S. 467, 483–86 (1986), are collateral.[10]  On the other hand, a claim that requires for its resolution application of the law to particular facts of the plaintiff's case is not collateral.  *See id.* at 484–85; *Friedman*, 2008 WL 11389031, at *4–5.  And "[e]ven where a plaintiff does not *directly* challenge the substance of agency action, his claims may still be barred if they are 'inextricably intertwined with the conduct of the very [administrative] proceeding the statute grants the [agency] the power to institute and resolve as an initial matter.'"  *Arriva Medical*, 239 F. Supp. 3d at 279 (quoting *Jarkesy v. S.E.C.*, 803 F.3d 9, 23 (D.C. Cir. 2015)) (alterations in original)); *see also Heckler*, 466 U.S. at 614.

Plaintiffs make several arguments that their claims are collateral, but none carry the day.  They try to draw parallels between their case and *Tataranowicz* and *Bowen*, arguing that because they challenge a policy, rather than (for example) a factual determination, their claim is collateral.  Pls.' Opp. at 17–18.  But the *Tataranowicz* court based its decision on the futility exception; it explicitly disclaimed reliance on collaterality.  959 F.3d at 275.  And in *Bowen*, the plaintiffs' challenge to the policy at issue there clearly stood apart from their claims for benefits.  In that case, the plaintiffs challenged an unlawful adoption of a secret agency-wide policy by

---

[10] The *Bowen* Court waived the exhaustion requirement of § 405(g) based on futility *and* collaterality.  *See Bowen*, 476 U.S. at 485.

13

which the SSA presumed that mentally disabled claimants whose impairments did not meet or equal an impairment listed in agency regulations retained the capacity to do at least unskilled work, rather than proceeding to evaluate their capacity.[11] 476 U.S. at 470–71, 473. The policy was an obstacle to obtaining a valid, fair decision on whether the plaintiffs would have a right to benefits, and after that obstacle was removed, some plaintiffs would ultimately receive benefits, while others would not. *See also Harvey v. Colvin*, No. 13-cv-1957 (RMC) (DAR), 2015 WL 4078223, at *7 (D.D.C. July 1, 2015) ("Other Circuits have held such claims to be collateral to a substantive claim for benefits when, as here, the plaintiffs 'would not automatically be entitled to receive benefits if they prevail, but only to receive "the procedure they should have been accorded in the first place."'" (quotation omitted)).

---

[11] In an argument which does not fit neatly into any of the three traditional bases for judicial waiver of exhaustion, Plaintiffs also argue that they too challenge a secret, agency-wide policy and so, as in *Bowen*, the Court should excuse them from exhausting their administrative remedies. Pls.' Opp. at 23–24. But for a variety of reasons, the Court declines to carve out a new basis for waiver here. The covert nature of the government's conduct in *Bowen* was most relevant to the Court's discussion of equitable tolling of the statute of limitations, which is not at issue in this case. 476 U.S. at 477–81. And the Court appears to have relied on this ground to waive the exhaustion requirement only as to those members of a certified class for whom, at the time the lawsuit was filed, it was too late to engage further in the administrative process. *Id.* at 482. Plaintiffs here—in particular, Jones and Pezas—do not allege that they are similarly situated. Finally, this case does not present similar "secrecy" on the part of the government. Unlike in *Bowen*, where the policy was truly hidden, *see id.* at 473–74, Plaintiffs assert that the Social Security Handbook, a layperson's guide to SSA policy, discusses the WEP but does not say that it applies to the benefits received by some beneficiaries who have foreign pensions. Pls.' Opp. at 24. They concede, however, that the applicable provisions of the POMS are available to the public. *Id.* at 24–26. And unlike in *Bowen*, the government informed Plaintiffs that the WEP was in fact applied to their benefits by virtue of their receipt of a foreign pension. Although Plaintiffs further argue that the government does not specifically disclose that its application of the WEP to them and those similarly situated is unlawful, *id.* at 25–26, a mere allegation of unlawful agency action does not excuse administrative exhaustion. *See* Defs.' Reply at 12.

Here, by contrast, whether the WEP should be applied to Plaintiffs' benefits is the ultimate issue they seek to have decided in their case; their claims to increased benefits entirely turn on that question. Thus, their case is much more like *Heckler*, in which the Supreme Court found that the legality of a policy denying coverage for a specific kind of heart surgery was not a collateral issue when the plaintiffs' ultimate goal was payment for that surgery. 446 U.S. at 614. There, as here, the challenged policy was "inextricably intertwined" with the plaintiffs' substantive claim for benefits. *Id.*[12]

Plaintiffs also again rely on *Beeler*, which found that the plaintiffs' challenge to application of the WEP to their benefits based on their Canadian and Quebecois pensions was collateral. *See* Pls.' Opp. at 18–20. The *Beeler* court, applying Seventh Circuit precedent, found that "the amount of Social Security retirement benefits to which each plaintiff is entitled would not be impacted by the outcome of Plaintiffs' claims in this litigation because that amount has already been determined by the SSA with regard to each plaintiff based on his or her individual contributions." 2016 WL 7111646, at *4. The Court finds that reasoning unpersuasive. A ruling in the Plaintiffs' favor on applying the WEP to their claims *would* increase the amount of

---

[12] Plaintiffs try to distinguish *Heckler* by arguing that there, unlike here, the plaintiffs' claims arose solely under the Social Security Act. In this case, they argue, Plaintiffs' claims do not solely arise under the Act, because the SSA relies on information from foreign governments regarding Plaintiffs' eligibility for and entitlement to foreign pensions when applying the WEP and calculating Plaintiffs' Social Security benefits. Pls.' Opp. at 20. For starters, it is not at all clear why this argument is relevant to collaterality. And even if it were, it is unpersuasive. That the calculation of Plaintiffs' benefits—to which they are entitled under the Social Security Act—depends in part on information from outside sources does not mean that their claim does not arise under the Act, and they cite no authority to support their argument that it does not. *See Heckler*, 466 U.S. at 621 (holding that a plaintiff's claim "arose under" the Act where the ultimate outcome he sought was payment under the Act, even when he had not yet presented a claim to the SSA, because to hold otherwise would "allow claimants substantially to undercut Congress' carefully crafted scheme for administering the Medicare Act").

benefits they receive across the board. Whether the SSA has already calculated the amount they would receive without the WEP is of no moment. And that Plaintiffs have already been found to be entitled to *some* benefits does not mean that a suit seeking to *increase* those benefits is collateral.[13]

In the end, a collaterality analysis is not amendable to a rigid, mechanical test. *Cf. Bowen*, 476 U.S. at 484 (stating that "application of the exhaustion doctrine is 'intensely practical'" (quotation omitted)). The ultimate question is whether, at bottom, the plaintiffs' claim is one for substantive benefits, or something else. For all the above reasons, the claim here is fundamentally one for benefits.

### 3. Irreparable Harm

Finally, Plaintiffs argue that they would be irreparably harmed if forced to complete a long administrative process before suing, because they are elderly, retired people with limited incomes and applying the WEP to their benefits has "a significant impact on Plaintiffs' standard of living at an advanced age." Pls.' Opp. at 22. But in this Circuit, an "irreparable harm is an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate." *Beattie*, 845 F. Supp. 2d at 192–93 (citation omitted). Harm is irreparable only where retroactive payments would not make the plaintiff whole. *See Eldridge*, 424 U.S. at 331. "To demonstrate irreparable harm, a plaintiff generally must demonstrate more than economic distress, even if severe." *Nat'l Ass'n for Home Care & Hospice, Inc. v. Burwell*, 77 F. Supp. 3d 103, 110 (D.D.C. 2015).

---

[13] Similarly, the Court disagrees with Plaintiffs' argument, relying on *Beeler* and the Seventh Circuit's decision in *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991), that any challenge to a "system-wide" policy is necessarily collateral. In fact, the *Marcus* court emphasized that the plaintiffs in that case facially challenged a policy which stood "independent of the ultimate merits of each plaintiff's claim for benefits." *Id.*

Here, although unfortunate, the hardships that Plaintiffs allege do not meet the high standard of irreparability in this Circuit. Plaintiffs frame their suffering as a diminished ability to meet the demands of daily life, leading to "a lowered standard of living that cannot be recouped years later," Pls.' Opp. at 22, but they allege neither the severity nor the irreversibility necessary to meet the standard of irreparable harm. Defendants correctly point out that, if it were enough to show irreparable harm that an elderly plaintiff was faced with a lower standard of living, then many Social Security recipients challenging benefits determinations would be excused from the administrative review process, and the exception would swallow the rule. Defs.' Reply at 9–10. And while Plaintiffs allude to both medical and financial problems, they do not allege that the WEP makes them unable to pay for or access any currently-necessary medical treatment. And although several have submitted declarations attesting to the more specific harms they either have suffered or may suffer, Jones and Pezas, the only remaining plaintiffs for whom venue is proper, have not done so.[14]

\*   \*   \*

Because Plaintiffs do not meet any of the criteria for judicial waiver of the exhaustion requirement in 42 U.S.C. § 405(g), the Court will grant Defendants' motion for summary judgment for failure to exhaust as to the two remaining plaintiffs, Jones and Pezas.

---

[14] Only two plaintiffs come close to meeting the standard based on their declarations, but they both come up short. The first states that due to blocked arteries in her legs, "it could be in the future [she] might need major surgery if [she is] not to lose the use of [her] legs," and that there is "no way" she could afford the required surgery. ECF No. 35-4 ¶ 3. But while inability to afford such a procedure is a sufficiently "great," harm, she does not say that it is "imminent" or indicate that it is "certain"—as opposed to merely possible—that she will need it. *Beattie*, 845 F. Supp. 2d at 192–93. The second states that she had lived part-time in Florida, where the climate helped her lung condition, but that her expenses forced her to sell her home there, and that at age 65 she now has "the lungs of an 80 year old." ECF No. 35-5 ¶¶ 2–5. Again, while unfortunate, her representations do not show she would suffer "irreparable harm" by following the administrative process here.

17

### C. Other Bases for Judicial Review

Plaintiffs offer two bases other than 42 U.S.C. § 405(g) for this Court to hear their case: 42 U.S.C. § 1383(c)(3) and 28 U.S.C. § 1361.  Neither is available.  42 U.S.C. § 1383(c)(3) provides for judicial review of certain benefits decisions "as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  Because judicial review of Plaintiffs' claims is not appropriate under § 405(g), neither is it under § 1383(c)(3).  Turning to 28 U.S.C. § 1361, mandamus jurisdiction, Plaintiffs have not met the extraordinarily high bar mandamus requires.  "A court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)).  Plaintiffs meet none of the requirements.  First, they have not shown a clear right to relief or a clear nondiscretionary duty on the part of Defendants.  Indeed, they essentially fail to argue the point, claiming only that Defendants have a "clear nondiscretionary duty to the Plaintiffs not to violate the law."  Pls.' Opp. at 27.  But it is far from clear that application of the WEP to Plaintiffs' pensions in fact violates the law, and Plaintiffs do not show that it does.  This question "merges with the merits" of the case, *Lovitky*, 949 F.3d at 759 (quotation omitted), and Plaintiffs, conceding that "[t]here is no argument at this stage about the merits," Pls.' Opp. at 9, do not address them.  In addition, mandamus is not available here because Plaintiffs have not exhausted administrative remedies and are not excused from doing so.  *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001).

**IV.     Conclusion**

For all of these reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 24).  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 29, 2020